IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT MICKENS, SR, | ) | |
| | ) | |
| Plaintiff | ) | Case No. 1:18-005 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL CLARK, et al., | ) | RICHARD A. LANZILLO |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| Defendants | ) | |
| | ) | OPINION ON DEFENDANTS' |
| | ) | MOTION TO DISMISS |
| | ) | [ECF NO. 43] |

MEMORANDUM OPINION

Plaintiff Robert Mickens, Sr., ("Plaintiff"), an inmate at the State Correctional Institution at Albion ("SCI-Albion"), initiated this civil rights action pursuant to 42 U.S.C. § 1983, alleging that various prison officials violated his Eighth Amendment rights by displaying deliberate indifference to his serious medical needs as well as holding him in unconstitutional conditions of confinement. ECF No. 6. Plaintiff filed a Second Amended Complaint on November 23, 2018, which is the operative pleading in this action. ECF No. 42. Presently pending before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 43] for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, Defendant's motion will be granted.[1]

I. Factual Background

In his Second Amended Complaint, Plaintiff alleges that he contracted a "Manny-Bacterial" infection from a defective toilet "located in his (25) cell due to his penis resting in

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. *See* ECF Nos. 9, 33.

1

tainted water prior to the discovery of the hazardous bile leaking to and fro (sic) the malfunctioning toilets." ECF No. 42, ¶ 8. Plaintiff alleges that he submitted a "work order" for the malfunctioning toilet and further states that Maintenance Manager Thomas Mook received the work order electronically but failed to timely address the plumbing issue for "at least three weeks." *Id.* at ¶ 9. Plaintiff further alleges that prison Superintendent Michael Clark failed to take action to protect him from unsanitary and dangerous conditions at SCI-Albion. *Id.* at ¶ 72.

Plaintiff alleges that Defendant RN Gloria Gibbs twice denied him emergency treatment for an issue with his penis on July 18, 2017, first at 10:30 a.m., and again at 3:15 p.m. *Id* at ¶¶ 10-11. Plaintiff alleges that Gibbs declined to provide treatment because Plaintiff refused to sign a form acknowledging his obligation to pay the medical co-payment of $5.00; she instead allowed Plaintiff to return to his cell with his penis wrapped in toilet paper. *Id.* at ¶ 11. On July 19, 2017, Plaintiff was "sent back to medical on an emergency pass" and was "assessed" by RN Supervisor Michael Edwards, but Supervisor Edwards also denied Plaintiff emergency treatment and declined to provide care because Plaintiff again refused to sign the form acknowledging his obligation to pay the co-pay of $5.00. *Id.* at ¶¶ 12, 36. During that same visit, Supervisor Edwards referred Plaintiff to Infectious Control Nurse Jessica Owen for investigation of a possible sexually transmitted disease. *Id.* at ¶ 36. The next day, on July 20, 2017, Plaintiff was assessed by Nurse Owens and Physician Assistant Alexis Secara. *Id.* at ¶ 37. P.A. Secara prescribed Plaintiff with the following medications:

- 150 mg tab of Fluconazole, relating to a yeast infection;
- Clotrimazole 1% cream, as a substitute for Lotrimin; and
- Bacitracin Zinc Polymyxin B Sulfate, a "double antibiotic ointment," to "treat the trauma to plaintiff's penis."

*Id.* at ¶ 38.

Under the heading of "Exhaustion," Plaintiff's Second Amended Complaint indicates that Plaintiff received additional medical attention and test results on various other dates. The dates of testing and treatment, however, are not chronological, and it is difficult to discern whether certain references are related to others or to the conditions upon which Plaintiff bases his claims. Plaintiff alleges that on July 25, 2017, he "filed a complaint alleging that he placed a sick call slip into the medical box to have his kidney and liver function checked." *Id.* at ¶ 40. In the next paragraph of the Amended Complaint, however, Plaintiff states that "results of blood work revealed that Mickens had contracted a bacterial infection" and that ***on July 14, 2017***, he "was treated with the antibiotic prescribed by Alexis Secara." *Id.* at ¶ 41. This allegation appears to contradict Plaintiff's earlier allegation that certain Defendants initially refused to treat him and that he was not prescribed medication for his infection until July 20, 2017. Later paragraphs of the Second Amended Complaint further indicate that Plaintiff was administered a course of antibiotics and other medications for his condition no later than July 14, 2017. *See e.g. Id.* at ¶ 52 (referencing a record entry stating, "The inmate was first evaluated on **07.14.17**, for complaint of **Dysuria (painful urination and foul smelling urine)**. He was administered a course of antibiotics, sulfa drug known as Bactrim,...")(emphasis in original). Additionally, on October 3, 2017, it appears that Plaintiff was prescribed a ten-day course of treatment of Sulfatrim. *Id.* at ¶ 62.

Plaintiff commenced this action on January 26, 2018. He filed his Second Amended Complaint on November 23, 2018. ECF No. 6. On December 5, 2018, Defendants moved to dismiss the Second Amended Complaint for failure to state a claim. ECF No. 43. Plaintiff

responded to the motion on January 29, 2019. ECF No. 55. This matter is fully briefed and ripe for disposition.

II. Standards of Review

A. *Pro se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. U.S. District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Dep't of Corrections*, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

B. Motion to dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)

4

(citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine

       whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

III. Analysis

In his Second Amended Complaint, Plaintiff alleges that Defendants Thomas Mook (Maintenance Manager) and Michael Clark (Superintendent) violated the Eighth Amendment by waiting approximately three weeks to address certain plumbing issues with his toilet, which allegedly caused Plaintiff to develop a "Manny-Bacterial" infection on his penis. He further alleges that Defendants Gloria Gibbs (RN), Michael Edwards (RN Supervisor), and Jeri Smock (Healthcare Administrator/ CHCA) were deliberately indifferent to his serious medical needs while treating the aforesaid infection. These claims will be analyzed in turn.

  A. Conditions of Confinement

Under the Eighth Amendment, prison officials must provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter and medical care, and "take reasonable measure to guarantee the safety of the inmates." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L.Ed. 2d 59 (1981); *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). The inmate must allege that he had suffered an objectively sufficiently serious injury and prison officials were deliberately indifferent in inflicting this injury. *Tillman*, 221 F.3d at 418. "[E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, ... only those deprivations denying the

6

minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L.Ed. 2d 156 (1992).

Generally, the denial of access to a lavatory has been found to violate the Eighth Amendment "where it is unconscionably long or where it constitutes an ongoing feature of an inmate's confinement." *Cook v. Wetzel*, 2015 WL 2395390, at *5 (E.D. Pa. May 20, 2015). To summarize, these claims require proof of both a culpable state of mind, and objective proof of physical conditions of confinement that shock the conscience and depart from minimal civilized standards of life's necessities. *Rosa-Diaz v. Harry*, 2018 WL 3432547, at *8 (M.D. Pa. June 14, 2018) (addressing a similar claim involving inadequate lavatory access under this two-pronged framework).

In this case, the Court has determined that Plaintiff failed to plead facts on which a plausible inference may be based with regard to both prongs. Plaintiff has stated that his toilet was malfunctioning for at least three weeks, during which time a "work slip" remained pending. While he does not specifically detail the extent or nature of the toilet's malfunction, it appears that Plaintiff has alleged that the water level in the basin of the toilet was so high that his penis "rested in tainted water" when he sat upon the toilet. Further, without providing specific details, Plaintiff alleges that his toilet is connected to the toilet in the adjacent cell, and that the neighboring toilet spewed bile into his cell.

First, regarding the subjective inquiry as to whether Defendants Mook or Clark knew of conditions that were dangerous to Plaintiff's health but were deliberately indifferent thereto, Plaintiff appears to allege they were aware of the issue because he electronically filed a work slip. However, this is insufficient, as courts have routinely held that such notice is insufficient

7

to establish that a Defendant was personally involved in the unconstitutional conditions of confinement. *See Kokinda v. Pa. Dep't of Corr.*, 2017 WL 4049255, at *4 (W.D. Pa. Aug. 29, 2017) ("A defendant's failure to respond favorably to a request slip, however, does not amount to personal involvement within the context of § 1983"); *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (noting that a prison official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Plaintiff has failed to allege facts to support that Mook or Clark was on notice that the malfunctioning toilet was so serious that it deprived Plaintiff of the minimal civilized measure of life's necessities, nor has he alleged that Mook or Clark was actually aware of the conditions or health concerns presented by the malfunctioning toilet. The allegations of the Second Amended Complaint presently support no inference beyond Mook and Clark being on notice that a toilet in the prison required maintenance and that it took these Defendants approximately three weeks to address and rectify the problem.

Regarding the second prong, whether the conditions constituted an "extreme deprivation" or mere "routine discomfort," *see Hudson*, 503 U.S. at 9, the Court finds that Plaintiff has failed to plead facts on which a plausible inference of an 8th Amendment violation may be based. In *Ridgeway v. Guyton*, 663 F. App'x 203, 204 (3d Cir. 2016), the plaintiff alleged that his toilet "would overflow" with fecal matter, urine, and a black substance during a period of time from mid-October 2011 to November 18, 2011. He further alleged that nothing was done about the toilet, although a drain in his floor was fixed. *Id.* at 205. In upholding the District Court's dismissal of the claim, the Third Circuit found that the plaintiff's allegations "implied at most

8

that the toilet would overflow from time to time[.]" *Id.* The Third Circuit also pointed out that plaintiff "did not at any point allege that the overflowing was continuous or, in any event, make allegations sufficient to plausibly suggest that he was forced to live in squalor." *Id.*

Like the claim in *Ridgeway*, Plaintiff's claim lacks allegations upon which a plausible inference may be made that the malfunctioning toilet resulted in conditions sufficiently severe as to rise to the level of an Eighth Amendment violation. All that can be discerned from the Second Amended Complaint is that that during the three-week period Plaintiff's work slip remained pending, the water level in Plaintiff's toilet exposed him to unsanitary water when he used the toilet and that and he experienced an infection which was successfully treated with prescription medications. While the condition that Plaintiff described is certainly unpleasant, neither its nature nor the approximately three weeks it took prison personnel to rectify it is sufficient to constitute cruel and unusual punishment under the Eighth Amendment.

B. Deliberate Indifference to Serious Medical Needs

Plaintiff contends that Defendants Gloria Gibbs (RN), Michael Edwards (RN Supervisor), Jeri Smock (Healthcare Administrator/ CHCA) violated the Eighth Amendment's prohibition against cruel and unusual punishment by displaying deliberate indifference to his serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment") (internal quotation omitted). To establish a violation of his constitutional right to adequate medical care, a plaintiff is required to allege facts that demonstrate: (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Such indifference is manifested by an intentional refusal to provide care, delayed

9

medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

Plaintiff's claims in the instant action appear to be based primarily upon certain Defendants' delay in providing certain medical attention unless and until he signed a form acknowledging his obligation to pay a $5.00 co-pay for such services. This claim fails as a matter of law. The Third Circuit has held that charging an inmate for medical services or medication does not violate the Eighth Amendment so long as such a policy does not "condition provision of needed medical services on an inmate's ability to pay." *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997); *see also Gannaway v. Prime Care Med., Inc.*, 150 F. Supp. 3d 511, 548 (E.D. Pa. 2015). In *Reynolds v. Wagner*, the Third Circuit explained that "[a]lthough it is possible that ... fee-based programs [such as this one] may cause some prisoners to refrain from seeking medical treatment as early as they might otherwise do so, the deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society." *Id.* at 175.

Here, Plaintiff does not allege that he was denied medical attention based upon his inability to pay the co-pay. Plaintiff alleges that on certain occasions he refused to sign a document that acknowledged the co-pay obligation. Nowhere does Plaintiff allege that he was required to tender the payment as a condition to his receiving treatment. Indeed, the Second Amended Complaint states that Plaintiff received a considerable medical attention and treatment despite his refusal to sign the copay acknowledgement form. At minimum, Plaintiff was

10

evaluated by two separate medical providers during a three-day period, prescribed three different medications, and then prescribed an additional medication over one month later.

To the extent that Plaintiff challenges the quality of that treatment, his claim also fails. It is well-settled that "an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim." *Tillery v. Noel*, 2018 WL 3521212, at *5 (M.D. Pa. June 28, 2018) (collecting cases). Such complaints fail as constitutional claims because "the exercise by a doctor of his professional judgment is never deliberate indifference." *Gindraw v. Dendler*, 967 F. Supp. 833, 836 (E.D. Pa. 1997) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.")). "Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983." *Tillery*, 2018 WL 3521212, at *5 (citing *Gause v. Diguglielmo*, 339 Fed. Appx. 132 (3d Cir. 2009) (characterizing a dispute over pain medication as the type of "disagreement over the exact contours of [plaintiff's] medical treatment" that does not violate the constitution)). The Second Amended Complaint documents that Plaintiff received meaningful medical attention and medication for his infection and related conditions. The facts alleged in the Second Amended Complaint belie any claim that his conditions were ignored or that treatment was unreasonably delayed.

By the same token, "the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation." *Tillery*, 2018 WL 3521212, at *5 (quoting *Estelle*, 429 U.S. at 106). "Indeed, prison authorities are accorded considerable

latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). Thus, "courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care." *Hensley v. Collins*, 2018 WL 4233021, at *3 (W.D. Pa. Aug. 15, 2018) (quoting *Clark v. Doe*, 2000 WL 1522855, at *2 (E.D. Pa. Oct. 13, 2000)). *See also Wisniewski v. Frommer*, 751 Fed. Appx. 192, 2018 WL 4776165, at *3 (3d Cir. Oct. 3, 2018) (noting that "there is a critical distinction 'between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment.'").

In the instant case, Plaintiff received "some level of medical care" from all treating providers. *Hensley*, 2018 WL 4233021, at *3. As noted above Plaintiff was evaluated by multiple medical providers during, prescribed at least three or four medications, which the Second Amended Complaint indicates resolved his infection.. "Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978). Because Plaintiff's own pleading reflects that he received meaningful care for his conditions, his Eighth Amendment claim based upon that care must be dismissed.

C. Sovereign Immunity

Defendants also move for dismissal of all claims asserted against them in their official capacities based upon Eleventh Amendment sovereign immunity. The Eleventh Amendment to the United States Constitution proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). The DOC and the facilities that comprise the DOC are agencies or arms of the Commonwealth of Pennsylvania and, as such, they are entitled to Eleventh Amendment immunity unless an

12

exception to such immunity applies. *See Steele v. Pennsylvania*, 2009 WL 614800, at *8 (W.D. Pa March 6, 2009); s*ee also O'Donnell v. Department of Corrections*, 790 F. Supp 2d 289, 305 (M.D. Pa. 2011) (Eleventh Amendment immunity extends to DOC employees who are sued in their official capacities). Eleventh Amendment sovereign immunity is subject to three basic exceptions:

> (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; (2) a state may waive its sovereign immunity by consenting to suit; or (3) under Ex parte Young, 209 U.S. 123 (1908), a state official may be sued in his or her official capacity for prospective injunctive relief.

*See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *Koslow v. Pennsylvania*, 302 F.3d 161, 168 (3d Cir. 2002); *Hindes v. FDIC*, 137 F.3d 148, 165-66 (3d Cir. 1998). With respect to the first exception, it is well-settled that Congress did not intend to abrogate the states' sovereign immunity by enacting § 1983. W*ill v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Furthermore, Pennsylvania has unequivocally withheld its consent to such suits. Section 8521 of Title 42 of the Pennsylvania Consolidated Statutes clearly states, "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment of the Constitution of the United States." 42 Pa. Cons.Stat.Ann.§ 8521(6); *see also Lombardo v. Pennsylvania*, 540 F.3d 190, 196 n.3 (3d Cir. 2008); Pa.Const.Art. I, .§ 11; 1 Pa.Cons.Stat.Ann. §2310; *Lavia v. Department of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000). Because no exception to Eleventh Amendment immunity applies here, all claims against the Defendants in their official capacities must be dismissed from this action.

IV.  Leave to Amend

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction is equally applicable to *pro se* litigants and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, regarding the conditions of confinement claims directed against Defendants Mook and Clark, such amendment may not be futile, because more specific pleading with relevant facts, dates, and details could potentially state a claim relating to his conditions of confinement. For that reason, Plaintiff is granted leave to file an amended complaint on or before September 30, 2019. Plaintiff is reminded that an amended complaint "must be complete in all respects. It is a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Williams v. Ferdarko*, 2018 WL 3653272, at *1 n. 1 (W.D. Pa. Aug. 1, 2018).

The Court does not reach the same conclusion with regard to the medical claims levied against Defendants Gibbs, Edwards, and Smock. As discussed above, the factual allegations of Plaintiff's Second Amended Complaint demonstrate that those Defendants provided meaningful care and attention to Plaintiff; thus, any amendment to Plaintiff's claims directed at them would be futile. Similarly, the same conclusion applies to all claims directed against Defendants in their official capacities, as such claims are clearly barred by the doctrine of sovereign immunity.

V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [ECF No. 43] is GRANTED. Plaintiff's Second Amended Complaint is dismissed without prejudice as to the claim against Defendants Mook and Clark. Plaintiff's Second Amended Complaint is dismissed with prejudice as to Defendants Gibbs, Edwards and Smock and as to all claims directed against Defendants in their official capacities.

RICHARD A. LANZILLO
United States Magistrate Judge

Dated: September 24, 2019